People v Tavares (2024 NY Slip Op 50156(U))

[*1]

People v Tavares

2024 NY Slip Op 50156(U)

Decided on February 16, 2024

Criminal Court Of The City Of New York, Bronx County

Bowen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 16, 2024
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
Juan Carlos Tavares, Defendant.

Docket No. CR-010896-23BX

Stacey Strand, Assistant District Attorney, Bronx County, for the People 
Meg Tiley, The Bronx Defenders, for Defendant

E. Deronn Bowen, J.

Summary
1. The defense motion to deem invalid all certificates of compliance served and filed on or before September 20, 2023, is GRANTED.
2. The defense motion to dismiss the information on statutory speedy trial grounds is GRANTED.
3. Sealing of this matter is ORDERED STAYED for 30 days from the date of this decision and order.
 I. Background and Procedural History
The matter before the court is another chapter of the mini-saga of former NYPD Officer Steven Marksberry, who, on July 6, 2023, was arraigned in Supreme Court, Suffolk County, on an indictment charging him with 50 counts of promoting a sexual performance by a child (Penal Law § 263.15) and 69 counts of possessing a sexual performance by a child (Penal Law § 263.16). According to Suffolk County District Attorney Raymond A. Tierney, "[n]ot only is [Marksberry] alleged to have saved a large quantity of child sexual abuse material to his phone, but he is alleged to have done so while he was a sworn police officer" (Michael Mashburn, NYPD Officer From Lake Grove Kept Dozens Of Child Sex Abuse Images On Cell Phone, DA Says, Suffolk Daily Voice, July 6, 2023, available [*2]at 
https://dailyvoice.com/new-york/suffolk/lake-grove-nypd-officer-kept-dozens-of-child-sex-abuse-images-on-cell-phone-da-says/ [last accessed Feb. 11, 2024]).
Approximately 1½ months prior to his own indictment, Marksberry arrested defendant, Juan Carlos Tavares, on the instant matter. According to the information, in the early morning hours of May 20, 2023, Marksberry "observed defendant operating [a motor vehicle that] . . . made an illegal U-turn, nearly striking another passenger vehicle." Marksberry alleged in the information that defendant exhibited common-law indicia of intoxication, including "bloodshot watery eyes, slurred speech, and a strong odor of an alcoholic beverage emanating from his breath." Marksberry also observed "displayed on the breath analysis machine," while "present at the administration of a chemical test analysis of defendant's breath, [ ] that defendant's blood alcohol content (BAC) . . . was .15 of one percentum by weight," just shy of twice the legal 0.08% BAC limit in New York State.
Consequently, on May 21, 2023, defendant was arraigned on charges of per se driving while intoxicated (Vehicle and Traffic Law § 1192 [2]), common-law driving while intoxicated (Vehicle and Traffic Law § 1192 [3]) and driving while ability impaired by alcohol (Vehicle and Traffic Law § 1192 [1]). Discovery practice commenced immediately upon defendant's arraignment, and on August 9, 2023, the People served and filed a certificate of compliance (CoC). The People served and filed a supplemental CoC (SCoC) on each of September 12 and September 20, 2023. A statement of readiness (SoR) accompanied each certificate. On September 22, 2023, a motion schedule was set at defendant's request.

II. The Defense Omnibus Motion
 A. Discovery Compliance Point
In a branch of an omnibus motion dated October 16, 2023, defendant moves the court to invalidate the CoC and two SCoCs. Defendant explains that the People did not turn over to the defense Giglio impeachment material for Marksberry, to wit, NYPD Internal Affairs Bureau (IAB) logs, prior to serving and filing the CoC. When the Giglio material was subsequently turned over, defendant continues, it contained multiple unilateral redactions. Defendant argues that the delay in turning over the Giglio material to the defense was an inexcusable discovery compliance violation compounded by the unilateral redactions that were neither statutorily permissible nor authorized by court order.[FN1]

The People, in responsive papers served and filed on November 9, 2023, in opposition to defendant's omnibus motion, do not dispute the veracity of defendant's factual assertions concerning their post-CoC sharing of redacted Giglio material for Marksberry. Nonetheless, they counterargue, the CoC and SCoCs were filed in good faith as "Marksberry's Giglio is not required to be provided to Defense as he will not be a testifying witness and the misconduct does not relate to the subject matter of this case." The People orally presented the same, two-pronged argument to the court during a September 22, 2023, discovery conference (see CPL 245.35 [2]). The arguments were rejected then and are again rejected now.
1. Whether a Policer Officer Witness Is Testifying Is Irrelevant as a Matter of Law to the Determination of Whether Impeachment Material for That Officer Is Discoverable
The court rejects the People's claim that Giglio material for non-testifying police officers [*3]is per se not automatically discoverable under CPL 245.20 (1). "[L]imiting the disclosure obligation in the manner advocated by the [People] would allow the [People] to avoid disclosure of disciplinary records for officers who participated in an arrest, collected evidence and witness statements, or were otherwise assigned to a case, simply by declining to call those officers to testify" (Matter of E.S., 79 Misc 3d 681, 686 [Family Ct, NY County 2023]). Permitting such a blanket concealment of information concerning non-testifying officers may frustrate the factfinding purpose of trial. "It is not magical reasoning to perceive that Giglio disclosures could be of significant consequence to negate a defendant's guilt, provide a basis to suppress evidence, or support a potential defense even if the prosecution decided not to call the officer in question as a witness" (People v Peralta, 79 Misc 3d 945, 953 [Crim Ct, Bronx County 2023]; see People v Jackson, 79 Misc 3d 832, 840 [Crim Ct, NY County 2023] ["[T]he [non-testifying] lieutenant was integral to the investigation and arrest of defendant, and the [impeachment material] includes serious allegations that could bear on the lieutenant's conduct in defendant's arrest and the overall investigation of this case. Accordingly, underlying records concerning the lieutenant's misconduct could tend to negate defendant's guilt or support a potential defense"]).
Moreover, as the court has noted previously,
"[p]ractical consideration of the interests of judicial economy also counsels for the early disclosure of discovery material for non-testifying law enforcement officials. A party's witness list is not infrequently subject to change, even — or especially — at the last minute. If the People turn over discovery material for a non-testifying official to the defense early on, then, should the People later conclude that the official's testimony is necessary, proceedings will not be needlessly delayed as the People work to locate, procure and turn over to the defense the impeachment material" (People v Vallejo, — Misc 3d —, 2023 NY Slip Op 23394, *2 [Crim Ct, Bronx County 2023] [internal quotation marks omitted]).

 2. The Giglio Material at Issue Is, as a Matter of Fact, Presumptively 
 Discoverable Because It Relates to the Subject Matter of the Case at Bar
 a. The Giglio Material Concerns the Arresting Officer
Prong two of the People's responsive argument — that "the misconduct does not relate to the subject matter of this case" — is also unavailing.
"Material need not fit perfectly within any of the[ ] statutory categories [of CPL 245.20 (1)] to be deemed automatically discoverable. Rather, material is presumably automatically discoverable if its description and relat[ion] to the subject matter of the case is reasonably congruous with any of the statutorily denoted automatic discovery categories when read in light of the instruction to interpret CPL 245.20 (1) in favor of disclosure" (Vallejo, 2023 NY Slip Op 23394, *3 [internal quotation marks omitted]; see CPL 245.20 [1], [7]; People v Rahman, 79 Misc 3d 129[A], 2023 NY Slip Op 50692[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2023]; People v Edwards, 74 Misc 3d 433 [Crim Ct, NY County 2021] ["The Legislature's intent to require broad disclosure under Criminal Procedure Law article 245 is manifest. That intent is found throughout article 245: in the detailed list of what must be turned over and the emphasis that that list is 'including, but not limited to' the items enumerated"] [internal citations omitted], quoting CPL 245.20; People v Preston, 70 Misc 3d 355, 357 [Cohoes City Court 2020] ["CPL 245.20 (1) lists several categories of items that are to be disclosed. However, disclosure is not limited to items contained within these categories and thus incumbers [*4]the prosecution with a greater discovery burden"] [internal citations omitted]).
Marksberry is the arresting officer in this matter. He is a named eyewitness to defendant's alleged traffic infraction, leading to a near collision, that provided reasonable suspicion basis for the initial seizure of defendant's vehicle. Marksberry observed alleged signs of common-law intoxication, which formed the basis for the 1192 (3) and (1) charges against defendant, and observed the analysis of defendant's breath sample that resulted in the 1192 (2) charge.
While there may have been other NYPD and civilian eyewitnesses, none of them signed their names on an information attesting, under the penalty of perjury, that defendant committed unlawful acts. Marksberry did. This certainly does not mean that the Giglio material for Marksberry is per se relevant evidentiarily at a hearing or a trial. These facts, taken in totality, do, however, render this Giglio material "related to the prosecution of [the] charge[s]" in the instant matter (CPL 245.20 [2]; see Peralta, 79 Misc 3d at 953 ["This court posits that [the question of discoverability of Giglio material] is a case-specific inquiry and should be decided based upon the specific circumstances presented and because of, necessarily, a substantial nexus between the police officer in question, or law enforcement agency actions made on the government's behalf, to the arrest and/or investigation"]; Jackson, 79 Misc 3d at 840 ["The inquiry as to whether underlying records are discoverable under CPL 245.20 (1) (k) . . . is fact-specific, based on the officer's particular involvement in the case and the nature of the misconduct allegations against him"]). Thus, the Giglio material for Marksberry is presumptively discoverable in this matter.

b. Some of the Giglio Material Concerns Factual Determinations Made by Marksberry That Relate to Factual Determinations Marksberry Made in the Case at Bar
The redacted Giglio material for Marksberry includes information about an IAB investigation of a named NYPD Lieutenant E.A. who, on or about November 19, 2019, allegedly "was stopped by 52nd precinct patrol officers for driving very drunk and let go without an arrest." The IAB "investigation disclosed that," prior to the patrol officers observing Lt. E.A. allegedly committing a DWI crime, Marksberry had conducted an "investigation into the parked vehicle driven by Lt. [E.A.]." Specifically, "Marksberry approached [Lt. E.A.'s] parked vehicle[ ] and conducted a check into the vehicle and driver's condition. After being satisfied with the driver's response of being ok, [Marksberry] concluded his investigation into the parked vehicle without taking any enforcement action." So, to be clear, and setting aside the 119-count Suffolk County indictment, the Giglio material for Marksberry — the eyewitness arresting officer whose observations and attestation are the basis for the People lodging multiple DWI charges against defendant in the instant matter — includes allegations that on a previous occasion an investigatory determination by Marksberry that an individual was "ok" was called into direct question by other NYPD officers who described the same individual as "driving very drunk." The court cannot agree with the People's assertion that the allegations of this IAB log "do[ ] not relate to the subject matter of this case," a DWI prosecution initiated by Marksberry's accusation that defendant was intoxicated.
The NYPD and "the People are not authorized to unilaterally redact discoverable materials" (People v Cabezas, 80 Misc 3d 1229[A], 2023 NY Slip Op 51132[U], *6 [Crim Ct, Kings County 2023]), excepting where explicit legislative permission is given (see e.g. CPL [*5]245.20 [6]).[FN2]
Otherwise, court preapproval must be requested (see CPL 245.70 [1]; People v Soto, 80 Misc 3d 473, 480 [Crim Ct, NY County 2023 ["it was not for the People to unilaterally redact this information without seeking a protective order"]; People v Best, 76 Misc 3d 1210[A], 2022 NY Slip Op 50859[U], *7 [Crim Ct, Queens County 2022] ["The People, as a matter of internal office policy, have been unilaterally redacting law enforcement information without leave of court and have been selectively withholding disciplinary records that they themselves deem non-discoverable or irrelevant to the question of impeachment. These are determinations that are not for the People to decide"]). Consequently, the NYPD redactions to the Giglio material for Marksberry, which appear to be beyond that which is statutorily permissible, are in violation of the discovery statute.

3. The People Misapprehend the Prosecutor-Police Relationship Respecting the Discovery Statute
The People do make a most curious offer in their responsive papers: "If the Court believes that unredacted IAB logs must be disclosed, then the People will comply with the Court's lawful orders by taking a written order from the Court and sending it to the NYPD." This statement betrays the People's continued misunderstanding of their relationship with the NYPD vis-à-vis the discovery statute, a misunderstanding about which the court has previously brought to the People's attention:
"[A]utomatically discoverable material in the possession of the NYPD is deemed by statute to be in the People's coequal possession. Thus, when the People request material such as IAB logs from the NYPD, the only statutorily appropriate response by the NYPD, pursuant to the discovery statute, is to ensure the free flow of this material to the People. The court can fathom no reading of the discovery statute that permits the NYPD to impose additional preconditions — e.g., [requiring a written order from the court] — for handing over IAB material that the State Legislature has decreed to be in the People's possession.
Also concerning is the People's self-admitted kowtowing to these purported NYPD demands. The People cannot be made to jump through a series of NYPD-crafted hoops to receive discoverable material that the New York State Legislature deems to be in the People's possession — unless the People allow themselves to be made to so jump. . . . Whatever the policy, bureaucratic, interpersonal, moral and/or other reasons undergirding the People's accommodating reaction to the NYPD's unauthorized demands, the court cannot be complicit in such a perversion of the statutory order" (People v Chimborazo, 81 Misc 3d 442, 444-445 [Crim Ct, Bronx County 2023] [internal quotation marks and citation omitted]; see CPL 245.20 [2]; 245.55 [1] ["The district attorney and the assistant responsible for the case . . . shall endeavor to ensure that a flow of information is maintained between the police and other investigative personnel and his or her office sufficient to place within his or her possession or control all material and information pertinent to the defendant and the offense or offenses charged"], [2] ["upon request by [*6]the prosecution, each New York state and local law enforcement agency shall make available to the prosecution a complete copy of its complete records and files related to the investigation of the case or the prosecution of the defendant for compliance with this article"]).

 4. Defendant's Apparent Prompt-Notification Failure Does Not, on the Facts of the Case at Bar, Excuse the People's Discovery Compliance Failure
Defendant did not provide the People with statutorily mandated CPL 245.50 (4) (b) notice of his objection to the withholding of the Giglio material for Marksberry until September 19, 2023, via email, approximately 1½-months after the People served and filed the initial CoC. Nowhere in the omnibus motion does defendant explain the cause(s) for the delay. From the court's limited vantage point, it appears that defendant did not, "as soon as practicable" and "[t]o the extent that the party is aware of a potential defect or deficiency related to a certificate of compliance or supplemental certificate of compliance, . . . notify or alert the opposing party" (CPL 245.50 [4] [b]). The delay in turn may have prevented "questions about whether due diligence was exercised in the discovery process" from being "evaluated as soon as possible" (People v Bay, — NY3d —, 2023 NY Slip Op 06407, *6 [2023]) and may, in some cases, serve to excuse discovery compliance delays by the People.
"There is a caveat, however. In serving and filing a CoC, the People must certify that prior thereto they have exercised 'due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery.' Consequently, the People do not get to ignore discovery issues known to them just because defendant is unaware or has not provided CPL 245.50 (4) (b) notice. A CoC may be invalidated if, at the time of CoC service and filing, the People had actual or constructive knowledge of discovery shortcomings" (People v Guzman, 81 Misc 3d 1217[A], 2023 NY Slip Op 51363[U], *3 [Crim Ct, Bronx County 2023], quoting CPL 245.50 [1]; see People v Santos, 79 Misc 3d 11233[A], 2023 NY Slip Op 50778[U] [Crim Ct, Bronx County 2023] ["the People were apparently aware all along of [ ] missing [discoverable material], but, facing the imminent expiration of their 30.30 clock, proceeded to file a COC"]).
In this case, as already explained, the Giglio material pertaining to Marksberry's determination that a "very drunk" Lt. E.A. was "ok" relates to the subject matter of the instant DWI prosecution. That the People did not promptly retrieve from the NYPD and disclose to the defense the unredacted information, or timely request permission for the redactions from the court via a protective order motion, was a failure of due diligence (see CPL 245.10 [1] [a] [iv] [A] ["[p]ortions of materials claimed to be non-discoverable may be withheld pending a determination and ruling of the court . . . , [but] the discoverable portions of such materials shall be disclosed to the extent practicable"]; Bay, 2023 NY Slip Op 06407, *2 ["the plain terms of the [discovery] statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence"]).

5. Discovery Compliance Point Conclusions
The court finds that the People's initial withholding of the Giglio material for Marksberry, and the unilateral NYPD redactions that littered this discovery once it was turned over to the defense, contravene the express language and the overall intent of the discovery statute. Accordingly, the branch of the omnibus motion moving the court to deem invalid all certificates of compliance served and filed in this matter is GRANTED. Specifically, the failure [*7]to provide the defense with the Giglio material for Marksberry prior to August 9, 2023, renders invalid the CoC served and filed on that date; the unauthorized NYPD redactions thereupon renders invalid the two SCoCs filed on September 12 and September 20, 2023.

B. Speedy Trial Statute Point
"The legislature tethered the People's CPL article 245 discovery obligations to CPL 30.30's speedy trial requirements, through both the enactment of CPL 245.50 (3) and amendments to CPL 30.30 itself" (Bay, 2023 NY Slip Op 06407, *2; see People v Diallo, 78 Misc 3d 1218[A], 2023 NY Slip Op 50255[U] [Crim Ct, Bronx County 2023] ["The New York State Legislature crafted a compulsory interplay between the discovery and speedy trial statutes whereby the People must first verify that they have fulfilled their obligations in satisfaction of the former (via a valid CoC) before they may declare themselves ready to proceed to trial pursuant to the latter (via a valid SoR). The Legislature memorialized this mandatory sequentiality in both section 30.30 and section 245.50 of the Criminal Procedure Law"]). As the CoC and SCoCs served and filed in this matter as of September 20, 2023, are invalid, the respective SoRs are DEEMED ILLUSORY (see CPL 30.30 [5] ["Any statement of trial readiness must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of section 245.20 of this chapter"]; CPL 245.50 [3] ["the prosecution shall not be deemed ready for trial for purposes of section 30.30 of this chapter until it has filed a proper [CoC]"]).
The first post-arraignment adjournment in this matter was, in part, for a hardship hearing at defendant's request (see Vehicle and Traffic Law § 1193 [2] [e] [7] [e]). This adjournment, from May 21 — June 2, 2023, is not chargeable against the People's statutory speedy trial "clock" (see CPL 30.30 [4] [a]). The remaining discovery compliance time, from, but excluding, June 2, 2023 (see General Construction Law § 20; People v Stiles, 70 NY2d 765, 767 [1987]), to, and including, September 6, 2023 (see General Construction Law § 20; People v DiMeglio, 294 AD2d 239, 239-240 [2002]), when the instant motion schedule was set, is chargeable.[FN3]
This 96-day time period is beyond the People's 90-day statutory "clock" (see CPL 30.30 [1] [b]). Accordingly, the branch of the omnibus motion seeking dismissal of the information on statutory speedy trial grounds is GRANTED.

C. Stay of Sealing
The court STAYS SEALING of this matter for 30 days from the date of publication of this decision and order (see CPL 160.50).
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
Dated: February 16, 2024
Bronx, New York
E. Deronn Bowen, J.C.C.

Footnotes

Footnote 1:The redacted Giglio material for Marksberry that the People turned over to the defense in no way references or concerns his 119-count, Suffolk County indictment.

Footnote 2:The People explain in their responsive papers that they "provided [the Giglio material for Marksberry] to Defense in the same form that it was provided . . . [by the] NYPD. . . . No additional redactions were applied to the provided Giglio information by the [People]."
Footnote 3:
 This decision and order does not address what, if any, time after September 6, 2023, is chargeable against the People's statutory speedy trial "clock."